# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00704-CV

Appellant, Texas Mutual Insurance Company//Cross-Appellants, Eckerd Corporation; H.E. Butt Grocery Company; Third Party Solutions, Inc.; Wal-Mart Stores, Inc.; Apollo Enterprises, Inc.; and Walgreen Company

v.

Appellees, Eckerd Corporation; H.E. Butt Grocery Company; Third Party Solutions, Inc.; Wal-Mart Stores, Inc.; Apollo Enterprises, Inc.; and Walgreen Company// Cross-Appellee, Texas Mutual Insurance Company

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT NO. GN-103641, HONORABLE DARLENE BYRNE, JUDGE PRESIDING

## O P I N I O N

This case involves cross appeals by the plaintiffs and defendants below. Both hinge on whether an insurance company, when it alleges that a health care provider has overcharged it for prescription drugs dispensed under the Texas Workers' Compensation Act (the Act), must first exhaust remedies provided in the Act before bringing suit in court.

Appellant and plaintiff below, Texas Mutual Insurance Company (Texas Mutual), appeals the district court's grant of partial summary judgment in favor of appellees and defendants below, Eckerd Corp., H.E. Butt Grocery Co., Third Party Solutions, Inc., Wal-Mart Stores, Inc.,

Apollo Enterprises, Inc., and Walgreen Co. (collectively, Defendants).[1]  The partial summary judgment dismissed Texas Mutual's claims for negligent misrepresentation and for money had and received regarding amounts it alleges Defendants over-billed for prescription drugs dispensed to workers' compensation claimants.  The parties filed a joint motion to dismiss all remaining claims to obtain a final, appealable judgment.

Defendants appeal the district court's denial of their motion to dismiss Texas Mutual's claims for lack of subject matter jurisdiction.  Defendants argue that the Act grants the Texas Workers' Compensation Commission (the Commission) exclusive jurisdiction over workers' compensation medical fee claims.  Therefore, Defendants argue, the courts lack jurisdiction over such claims until the aggrieved party exhausts the administrative remedies established by the Commission.  For the reasons stated below, we will reverse and render judgment that the trial court lacked jurisdiction.  Accordingly, we need not address Texas Mutual's appeal that its claims should be reinstated.

## BACKGROUND

Under the workers' compensation system, pharmacies fill prescriptions at no charge to the injured worker.  28 Tex. Admin. Code § 134.502(d)(3) (2003).  The pharmacies then bill the

---

[1]  Plaintiff is a workers' compensation insurance carrier.  Defendants are four retail chain stores that operate pharmacies throughout Texas and two third-party billing companies that processed and submitted bills to Texas Mutual on behalf of some of the defendant pharmacies.

workers' compensation insurance carrier, which reimburses the pharmacy according to a Pharmaceutical Fee Guideline promulgated by the Commission.[2]

According to the Pharmaceutical Fee Guideline, the maximum allowable reimbursement is generally the provider's "usual and customary charge for same or similar service." The parties dispute the meaning of this standard. Texas Mutual interprets "usual and customary charge for same or similar service" to mean that pharmacies may not charge workers' compensation insurers more for drugs dispensed to injured workers than the amount charged to customers outside the workers' compensation system.[3] Texas Mutual alleges that Defendants have routinely submitted bills to Texas Mutual that grossly exceed the prices charged to the pharmacies' retail customers for

---

[2] In 1989, the Texas legislature enacted a new workers' compensation act, created the Texas Workers' Compensation Commission and granted it broad powers to implement and enforce the Act. *Texas Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 646-47 (Tex. 2004); *see* Tex. Lab. Code Ann. § 402.061 (West 1996). By legislative mandate, the Commission promulgated the Texas Workers' Compensation Commission Medical Fee Guideline 1996, which included standards to assess the maximum allowable reimbursement (MAR) for prescription drugs. According to the Pharmaceutical Fee Guideline, the MAR shall be the lesser of:

(1) the provider's usual and customary charge for same or similar service; or

(2) a formula based on the "Average Wholesale Price" for the pharmaceuticals.

*See* 28 Tex. Admin. Code § 134.201 (2003) (adopting the guideline). The Commission has since revised the fee guideline, adding a third factor to the MAR, a "negotiated or contract amount," that is not at issue here. *See id*. § 134.503.

[3] Defendants argue that the phrase "same or similar service" distinguishes the standard from their "usual and customary charge," because providing drugs to injured workers and then billing the insurance company involves a different service with higher costs than simply filling prescriptions for retail customers.

3

the same prescription drugs.[4]  On November 1, 2001, Texas Mutual brought suit in district court to recover amounts it allegedly overpaid Defendants, plus interest, attorney's fees, and other damages and penalties allowed by law.[5]  Texas Mutual requested declaratory and injunctive relief and asserted two common-law causes of action:  money had and received, and negligent misrepresentation.[6]

Defendants moved to dismiss on grounds that the Commission has exclusive jurisdiction over all medical fee disputes between workers' compensation insurers and health care providers and that Texas Mutual must exhaust its administrative remedies before bringing suit. Additionally, Defendants moved for partial summary judgment on Texas Mutual's negligent misrepresentation and money had and received claims.  The district court denied the motion to dismiss but granted Defendants' motion for partial summary judgment without stating the grounds for its ruling.  The parties agreed to dismiss their remaining claims to obtain a final judgment for the purposes of appeal.

### DISCUSSION

Because subject matter jurisdiction is a threshold issue affecting the power of this court to reach the merits of Texas Mutual's appeal, we first address Defendants' plea to the

---

[4] Texas Mutual alleges that Defendants billed up to four times the amount they charged retail cash customers.

[5] Although Texas Mutual claims that it needs discovery to quantify the total overpayments, it believes that the total overpayments exceed $1 million.

[6] Texas Mutual requested an injunction to prevent Defendants from submitting claims for reimbursement that exceeded the maximum allowed by the Pharmaceutical Fee Guideline and a declaration that the maximum reimbursement amount was the lesser of a pharmacy's "cash price" that a pharmacy charges customers not covered by workers' compensation insurance or the amount derived from the formula established in the TWCC Medical Fee Guideline (1996).

jurisdiction.  *See Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993) (subject-matter jurisdiction is essential to court's authority to decide case).  We must decide whether the Texas Workers' Compensation Act vests the Commission with exclusive jurisdiction over payment disputes arising under the Act.  If it does, a claimant must first exhaust its administrative remedies before a trial court has subject matter jurisdiction.  *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 221 (Tex. 2002) (op. on reh'g).  Determining whether a statute grants exclusive jurisdiction to an administrative agency requires statutory construction and raises jurisdictional issues.  *Id*. at 222.  An administrative agency has exclusive jurisdiction when the legislature gives the agency sole authority to make the initial determination in a dispute.  *Id*. at 221 (citing *Cash Am. Int'l, Inc. v. Bennett*, 35 S.W.3d 12, 15 (Tex. 2000)).  The issue of jurisdiction is a question of law that we review *de novo*.  *Id*. at 222.

Our Court recently held that the Commission has exclusive jurisdiction over medical fee disputes between providers and insurers and that a party to such a dispute must first exhaust its administrative remedies before bringing suit in court.  *Howell v. Texas Workers' Comp. Comm'n*, 143 S.W.3d 416, 437-38 (Tex. App.—Austin 2004, no pet. h.).[7]  In so holding, we relied on the standard established in *Subaru*:  an agency has exclusive jurisdiction "when a pervasive regulatory scheme indicates that the legislature intended for the regulatory process to be the exclusive means of remedying the problem to which the regulation is addressed."  *Id*. at 435 (quoting *Subaru*, 84

---

[7] The trial court did not have the benefit of our ruling in *Howell* when it denied Defendants' motion to dismiss for lack of jurisdiction.

S.W.3d at 221).[8]  The supreme court indicated that this determination depends on statutory interpretation. *Subaru,* 84 S.W.3d at 221.  In construing a statute to determine the legislature's intent, we consider "the language of the statute along with the statute's history, purposes and the consequences of alternate constructions." *Cash Am. Int'l*, 35 S.W.3d at 16.

In *Howell*, we looked at the history, purpose and statutory language of the Workers' Compensation Act and held that the Act constitutes a "pervasive regulatory scheme" that demonstrates the legislature's intent to grant the Commission exclusive jurisdiction over provider fee disputes. *Howell*, 143 S.W.3d at 437.  We noted that the legislature, in enacting the new workers' compensation system, intended to "strengthen the enforcement and adjudicatory powers of the Commission." *Id*. at 436 (quoting *Texas Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 514 (Tex. 1995)).  We considered the express language of the Act, which established mandatory reimbursement procedures and a system implemented by the Commission to review and resolve medical fee disputes. *Id*. at 436-37; Tex. Lab. Code Ann. § 413.031(c) (West 1996) ("In resolving

---

[8]  Texas Mutual argues that the legislature gave the Commission primary, not exclusive, jurisdiction over provider fee disputes. The judicially created primary jurisdiction doctrine allocates power between courts and agencies when both have authority to make initial determinations in a dispute. *Howell v. Texas Workers' Comp. Comm'n*, 143 S.W.3d 416, 435 (Tex. App.—Austin 2004, no pet. h.).  Texas Mutual argues that *Subaru* stands for the proposition that the legislature only confers exclusive jurisdiction on an agency to handle disputes arising under the statute if it evinces this intent through express language. *See Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 220 (Tex. 2002) (op. on reh'g) (administrative agencies may exercise only those powers conferred upon them by clear and express statutory language).  Because the Act does not use the words "exclusive jurisdiction" in describing the Commission's adjudicatory power over medical fee disputes, Texas Mutual argues that the legislature did not intend to grant sole authority over such disputes in the Commission.  We note, however, that Texas Mutual's reading of *Subaru* has been foreclosed by *Howell*, which determined that legislative intent to vest sole authority in the Commission was clear from the "pervasive scheme" established by the Act.

disputes over the amount of payment . . . , the role of the commission is to *adjudicate* the payment given the relevant statutory provisions and commission rules.") (emphasis added). These procedures expressly condition a party's access to the courts on first exhausting its administrative remedies: "A party *who has exhausted the party's administrative remedies* under this subtitle and who is aggrieved by a final decision of the State Office of Administrative Hearings may seek judicial review of the decision." Tex. Lab. Code Ann. § 413.031(k) (West 1996) (emphasis added). As in *Howell*, this medical fee dispute[9] falls within the exclusive jurisdiction of the Commission. Because the Act's pervasive scheme indicates that the legislature intended the Commission to serve as the sole authority to adjudicate disputes arising under the Act, the district court did not have jurisdiction to hear Texas Mutual's claims until Texas Mutual had exhausted its administrative remedies.

In addition to arguing that the lack of "clear and express" language does not evince legislative intent to vest sole authority in the Commission over medical fee disputes, Texas Mutual, citing *Cash America*, argues that the legislature did not intend to abrogate its common law claims when it authorized the Commission to develop administrative fee dispute procedures. *See Cash America*, 35 S.W.3d at 16 (legislature did not intend to abolish claims existing at common law when

---

[9] Pharmaceuticals are among the health care services regulated by fee guidelines that calculate payments due health care providers. *See* Tex. Admin. Code §§ 134.201 (governing medical fee guidelines as applied to pharmaceuticals), 134.500 *et seq.* ("Guidelines for Medical Services, Charges, and Payments, Subchapter F. Pharmaceutical Benefits") (2004). The administrative code also repeatedly refers to pharmacists as health care providers and distinguishes them from doctors. *See id.* §§ 134.501(a) ("[I]f, prior to providing the pharmaceutical services, the health care provider (HCP) obtains . . ."), (a)(3) ("[E]ven if the HCP provided pharmaceutical services beyond the first seven days. . . ,"), (d) ("[T]he HCP may dispense prescription or nonprescription medications in the amount ordered by the doctor. . . "). A dispute between a health care provider and an insurance carrier regarding proper payment is a medical fee dispute. *See id.* § 133.307(b) (2004) (Tex. Workers' Comp. Comm'n, Medical Dispute Resolution of a Medical Fee Dispute).

it created administrative remedy for disputes over pledged property). We first note that Texas Mutual's position has been foreclosed by our holding in *Howell*. We further note that Texas Mutual's reliance on *Cash America* is misplaced. Unlike the dispute in *Cash America*, Texas Mutual's claims are "common law" in name only.[10] Only through creative pleading has Texas Mutual transformed Defendants' alleged violations of the Workers' Compensation Act fee provisions into claims sounding in tort and equity. Texas Mutual alleges that Defendants overcharged it and negligently misrepresented to Texas Mutual that they were charging the correct amount. Both of these claims derive from the statutory provision setting the maximum allowable reimbursement for pharmaceuticals. At common law, there is no standard or duty to charge a particular amount for prescription drugs; only the statute provides a standard for determining whether Defendants charged Texas Mutual an excessive amount.[11] Therefore, the supreme court's concern in *Cash America* for preserving consumers' common law claims is inapposite to the context of this case, where we have two claims that cannot be adjudicated without also adjudicating the proper

---

[10] In *Cash America*, a pledgor sued a pawnshop alleging common law claims for conversion, negligence, and gross negligence after the property she had pledged was stolen. *Cash Am. Int'l, Inc. v. Bennett*, 35 S.W.3d 12, 14-15 (Tex. 2000). The supreme court ruled that the Pawnshop Act did not supplant her common law rights, which existed prior to and independent of the statute. *Id*. at 16.

[11] *See Bone v. Utica Nat'l Ins. Co. of Tex*., No. 02-02-00209-CV, 2003 Tex. App. LEXIS 6833, at *14 (Tex.App.—Fort Worth August 7, 2003, pet. denied) (not designated for publication) (citing *American Motorists Ins. Co. v. Fodge*, 63 S.W.3d 801, 804 (Tex. 2001)) (health care provider could not pursue tort claims against workers' compensation insurer without exhausting administrative remedies when claims required adjudication of matters solely within Commission's jurisdiction).

meaning of the "maximum allowable reimbursement" provided in the Pharmaceutical Fee Guideline.[12]

Because the Commission has exclusive jurisdiction over this statutory provision and the claims that arise from it, Texas Mutual must exhaust its administrative remedies before bringing these claims in court. *See Burgess v. Gallery Model Homes, Inc.*, 101 S.W.3d 550, 558 (Tex. App.—Houston [1st District] 2003, pet. denied) (quoting *Mingus v. Wadley*, 285 S.W.1084, 1087 (Tex. 1926)) ("The general rule is that where the cause of action and remedy for its enforcement are derived not from the common law but from the statute, the statutory provisions are mandatory and exclusive, and must be complied with in all respects or the action is not maintainable."). We sustain the Defendants' issue on appeal.

## CONCLUSION

Because the Texas Workers' Compensation Act's pervasive scheme indicates the legislature's intent to grant the Commission exclusive jurisdiction over medical fee disputes, we reverse the district court's judgment denying the Defendant's motion to dismiss and render judgment

---

[12] Texas Mutual asked the court to award it money and interest from the Defendants and to provide injunctive and declaratory relief. The Act gives the Commission the power to grant these remedies. It can order providers to refund payments that exceed amounts permitted by the Fee Guideline and pay interest on money refunded, and can enforce sanctions on providers who commit administrative violations, including "a reduction or denial of fees" or "restriction, suspension, or revocation of the right to receive reimbursement." *See* Tex. Lab. Code Ann. §§ 413.016(a), 413.019, 415.023(b)(1), (4) (West 1996 & Supp. 2004). The ability of the Commission to fully compensate an injured party, to sanction parties that violate the Act, and to establish and enforce the Act's provisions further demonstrates the legislature's intent to grant the Commission exclusive jurisdiction over these claims. *C.f. Cash America*, 35 S.W.3d at 15 (only administrative remedy available under Pawnshop Act was "like-kind replacement" of lost property).

dismissing Texas Mutual's claims for lack of jurisdiction. Having held that the trial court lacked jurisdiction, we need not address Texas Mutual's claims for money had and received and for negligent misrepresentation.

_____

David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Reversed and Rendered

Filed: January 21, 2005