

# NUMBER 13-20-00125-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

DR. LALITHA MADHAV JANAKI,                                          Appellant,

v.

C.H. WILKINSON PHYSICIAN NETWORK
D/B/A CHRISTUS PHYSICIAN GROUP,                           Appellee.

## On appeal from the 319th District Court
## of Nueces County, Texas.



# NUMBER 13-20-00126-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

DR. LALITHA MADHAV JANAKI,                                                    Appellant,

v.

CHRISTUS SPOHN HOSPITAL –
CORPUS CHRISTI AND CHRISTUS
SPOHN HOSPITAL CORPUS CHRISTI –
SHORELINE,                                                                              Appellees.

### On appeal from the 319th District Court
### of Nueces County, Texas.



# NUMBER 13-20-00127-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

DR. LALITHA MADHAV JANAKI,                                     Appellant,

v.

CHRISTUS SPOHN CANCER CENTER –
CALALLEN AND CHRISTUS SPOHN
CANCER CENTER – SHORELINE,                                     Appellees.

### On appeal from the 319th District Court
### of Nueces County, Texas.

# OPINION

**Before Chief Justice Contreras and Justices Hinojosa and Silva**
**Opinion by Justice Silva**

Appellant Dr. Lalitha Madhav Janaki brought suit against appellees C.H. Wilkinson d/b/a Christus Physician Group (CPG); Christus Spohn Hospital – Corpus Christi, Christus Spohn Hospital Corpus Christi – Shoreline (collectively, the Hospitals); and Christus Spohn Cancer Center – Calallen, and Christus Spohn Cancer Center – Shoreline (collectively, the Cancer Centers) for retaliation against Dr. Janaki for reporting potential Medicare fraud. Appellees each filed a motion for summary judgment, asserting that the statutory relief sought by Dr. Janaki was inapplicable to each party as a matter of law. The trial court granted each appellee's motion for summary judgment. By three issues, one applicable to each set of appellees, Dr. Janaki asserts the trial court erred by granting the motions for summary judgment because appellees should be treated as a "single integrated enterprise," thus allowing the statutory relief pleaded. We affirm.

## I. BACKGROUND

Dr. Janaki, a radiation oncologist, was employed by CPG as a physician providing cancer treatment to patients at the Hospitals and Cancer Centers. Dr. Janaki's employment contract with CPG began on June 27, 2014, and, throughout her employment, she maintained privileges[1] with the Hospitals and Cancer Centers. In December 2016, Dr. Janaki began raising concerns with CPG and the Hospitals regarding the Hospitals' use of Medicare physician billing numbers and services for physicians who no longer provided services at the Hospitals.[2] On August 18, 2017, Dr. Janaki was called

---

[1] Privileges, as used in a medical setting, refers to a physician's ability to admit patients to a particular hospital or facility and use their resources to treat admitted patients. *See* 42 U.S.C. § 11151(3); *see also Tenet Health Ltd. v. Zamora*, 13 S.W.3d 464, 470–72 (Tex. App.—Corpus Christi–Edinburg 2000, pet. dism'd w.o.j.).

[2] In order to provide services under Medicare, physicians must apply for and receive a unique identifier which is used to bill for services covered by Medicare. *See* U.S. DEP'T OF HEALTH & HUMAN SERVS.,

into a meeting with a representative from CPG and a human resource official from the Hospitals. At the meeting, CPG informed Dr. Janaki that it was terminating her employment because of her behavior and quality of patient care.

On August 30, 2017, Dr. Janaki's then-counsel received a letter from CPG's regional counsel stating that "[t]he hospital informed CPG that it no longer wanted Dr. Janaki to provide services under the CPG contract." Dr. Janaki subsequently filed a petition against appellees, alleging they retaliated against her in violation of Texas Health and Safety Code § 161.134, which prohibits retaliation against an employee of a hospital, mental health facility, or treatment facility for reporting violations of law. *See* TEX. HEALTH & SAFETY CODE ANN. § 161.134.

Each appellee filed a traditional motion for summary judgment. CPG sought summary judgment on the basis that § 161.134 only protects against retaliation by "hospitals, mental health facilities, and treatment facilities" none of which described CPG. *Id.* § 161.134(a). The Cancer Centers and Hospitals sought summary judgment on the basis that § 161.134 only provides relief for employees of hospitals and treatment facilities and that Dr. Janaki was not an employee of any of their facilities or businesses. *See id.* In response, Dr. Janaki alleged that CPG, the Hospitals, and the Cancer Centers operated as "a single, integrated enterprise" as set out by the Fifth Circuit in discrimination cases under Title VII of the Civil Rights Act of 1964. *See Trevino v. Celanese Corp.*, 701

---

*Medicare Enrollment Application CMS 8551* (effective Dec. 1, 2018), https://www.cms.gov/Medicare/CMS-Forms/CMS-Forms/Downloads/cms855i.pdf (last visited March 1, 2021).

A hospital or other provider may submit a claim for services provided by a physician under a contractual arrangement between the physician or physician group and the hospital. *See* CTR. FOR MEDICARE & MEDICAID SERVS., *Medicare Claims Processing Manual*, § 30.2.7 (2020), https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/Downloads/clm104c01.pdf (last visited March 1, 2021).

F.2d 397, 403–04 (5th Cir. 1983) (noting that "superficially distinct entities may be exposed to liability upon a finding that they represent a single, integrated enterprise").

After a hearing, the trial court asked each side to provide the court with supplemental briefing. Following the submission of each party's supplemental briefing, the trial court granted each appellee's motion for summary judgment and entered a take-nothing judgment in favor of appellees. This appeal followed.

## II. STANDARD OF REVIEW

We review the trial court's summary judgment de novo. *Provident Life & Accident Ins. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). "When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Id.* When the trial court's order does not specify the grounds for its summary judgment, "we must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious." *Id.* at 216. "[T]he party moving for summary judgment bears the burden to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." *Id.* (citing TEX. R. CIV. P. 166a). "A fact is 'material' only if it affects the outcome of the suit under the governing law." *W. Trinity Props., Ltd. v. Manhattan Mortg. Corp.*, 92 S.W.3d 866, 869 (Tex. App.—Texarkana 2002, no pet.); *see also Garrigues v. Hardie*, No. 13-18-00418-CV, 2020 WL 4812636, *8 (Tex. App.—Corpus Christi–Edinburg Aug. 13, 2020, no pet.) (mem. op.). "A movant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim." *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004).

6

## III.    APPLICABLE LAW

### A.    Retaliation

Texas is an at-will employment state. *Ritchie v. Rupe*, 443 S.W.3d 856, 885 (Tex. 2014). At-will employment allows both employers and employees to "terminate their relationship at any time for any reason unless they contractually agree otherwise." *Hillman v. Nueces County*, 579 S.W.3d 354, 358 (Tex. 2019) (citing *Ritchie*, 443 S.W.3d at 885–86). However, there are exceptions to at-will employment. *See Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 453 (Tex. 1996); *see, e.g.*, *Sabine Pilot Serv., Inc. v. Hauck*, 687 S.W.2d 733, 735 (Tex. 1985) (creating the at-will employment exception prohibiting employers from terminating employees for refusing to commit illegal acts) *see also Word v. N. Jones Reg'l Health Sys.*, No. 05-06-00881-CV, 2007 WL 2421500, at *4 (Tex. App.— Dallas Aug. 28, 2007, no pet.) (mem. op.) ("Statutes protecting workers from retaliatory discharge are exceptions to the common law doctrine of employment at will."). One exception to at-will employment is that:

> A hospital, mental health facility, or treatment facility may not suspend or terminate the employment of or discipline or otherwise discriminate against an employee for reporting to the employee's supervisor, an administrator of the facility, a state regulatory agency, or a law enforcement agency a violation of law, including a violation of this chapter, a rule adopted under this chapter, or a rule of another agency.

TEX. HEALTH & SAFETY CODE ANN. § 161.134(a). A covered entity that retaliates against an employee is liable to that employee for injunctive relief, damages, or both. *Id.* § 161.134(b). Damages include actual damages, including those for mental anguish, exemplary damages, and reasonable attorney's fees. *Id.* § 161.134(c), (d). Section 161.134 applies to retaliation for reporting violations of federal law, such as the Medicare complaints voiced by Dr. Janaki, here. *See id.* § 161.134(a) (prohibiting a hospital, mental

7

health facility, or treatment facility from retaliating or discriminating against an employee for reporting "a violation of law"); *see also U.S. ex rel. Smart v. Christus Health*, 626 F. Supp. 2d 647, 657 (S.D. Tex. 2009) (applying § 161.134 to a retaliation claim for reporting violations of the False Claims Act, 31 U.S.C. §§ 3729–3733).

The elements of a retaliatory discharge claim under § 161.134 are: (1) the plaintiff was an employee of a hospital, mental health facility, or treatment facility; (2) the plaintiff reported a violation of law; (3) the plaintiff reported the violation to a supervisor, an administrator, a state regulatory agency, or a law enforcement agency; (4) the report was made in good faith; and (5) the plaintiff was suspended, terminated, disciplined or otherwise discriminated against by the covered entity. TEX. HEALTH & SAFETY CODE ANN. § 161.134; *Barron v. Cook Child.'s Health Care Sys.*, 218 S.W.3d 806, 810 (Tex. App.—Fort Worth 2007, no pet.).

Conversely, § 161.135 prohibits a hospital, mental health facility, or treatment facility from retaliating against a *non-employee* in a similar manner but does not provide for relief as extensive as that provided for in § 161.134. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 161.134(c)–(e), 161.135(d)–(e). Under this section, it is a rebuttable presumption that the plaintiff was retaliated against if "before the 60th day after the date on which the plaintiff made a report in good faith, the hospital, mental health facility, or treatment facility . . . transfers, discharges, punishes, or *restricts the privileges* of the person . . . ." *Id.* § 161.135(c) (emphasis added).

Under §§ 161.134–.135, "hospital" includes a general hospital or a special hospital. *See id.* §§ 161.131(3), 241.003(7). A general hospital is:

> an establishment that offers services, facilities, and beds for use for more
> than 24 hours for two or more unrelated individuals requiring diagnosis,

8

treatment, or care for illness, injury, deformity, abnormality, or pregnancy; and regularly maintains, at a minimum, clinical laboratory services, diagnostic X-ray services, treatment facilities including surgery or obstetrical care or both, and other definitive medical or surgical treatment of similar extent.

*Id.* § 241.003(5). A special hospital is:

an establishment that (1) offers services, facilities, and beds for use for more than 24 hours for two or more unrelated individuals who are regularly admitted, treated, and discharged and who require services more intensive than room, board, personal services, and general nursing care; (2) has clinical laboratory facilities, diagnostic X-ray facilities, treatment facilities, or other definitive medical treatment; (3) has a medical staff in regular attendance; and (4) maintains records of the clinical work performed for each patient.

*Id.* § 241.003(15).

"Mental health facility" means

(1) an inpatient or outpatient mental health facility operated by the department, a federal agency, a political subdivision, or any person; (2) a community center or a facility operated by a community center; (3) that identifiable part of a general hospital in which diagnosis, treatment, and care for persons with mental illness is provided; or (4) with respect to a reciprocal agreement entered into under [§] 571.0081, any hospital or facility designated as a place of commitment by the department, a local mental health authority, and the contracting state or local authority.

*See id.* §§ 161.131(7), 571.003(12).

"Treatment facility" includes public or private hospitals, detoxification facilities, primary care facilities, intensive care facilities, long-term care facilities, outpatient care facilities, community mental health centers, health maintenance organizations, recovery centers, halfway houses, ambulatory facilities, or any other facility that offers or purports to offer treatment. *See id.* §§ 161.131(10), 464.001(5).

**B.    Single, Integrated Enterprise**

The single, integrated enterprise theory allows a plaintiff to hold superficially distinct entities liable for discrimination and retaliation under Title VII of the Civil Rights

9

Act of 1964 (Title VII).[3] *See Trevino*, 701 F.2d at 403–04 (applying the single, integrated enterprise theory to two entities in a suit for discrimination on the basis of national origin under Title VII). "Factors considered in determining whether distinct entities constitute an integrated enterprise are (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Id.* at 404. Courts have primarily focused on the second factor: centralized control of labor relations. *Id.* "This criterion has been further refined to the point that '[t]he critical question to be answered then is: What entity made the final decisions regarding employment matters related to the person claiming discrimination?'" *Id.* (quoting *Odriozola v. Superior Cosm. Distribs., Inc.*, 531 F. Supp. 1070, 1076 (D.P.R.1982)). "The term 'employer' as used in Title VII of the Civil Rights Act was meant to be liberally construed." *Id.* at 403.

When Texas law is analogous to federal law, we may look to federal statutes and case law to guide our interpretation of them. *See Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 476 (Tex. 2001) (applying federal case law analyzing claims under the Age Discrimination in Employment Act[4] to claims under the Texas Commission on Human Rights Act (TCHRA))[5]; *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 639–42 (Tex. 2012) (applying federal case law analyzing claims made under Title VII to claims made under the TCHRA). Some Texas appellate courts have reviewed retaliation claims

---

[3] Title VII prohibits covered entities from making adverse employment decisions based on a person's protected class, including race, color, religion, sex, or national origin. *See* 42 U.S.C.A. § 2000e *et seq.*

[4] The Age Discrimination in Employment Act of 1967 (ADEA) prohibits covered entities from discrimination on the basis of age against individuals over the age of forty. *See* 29 U.S.C.A. §§ 621–634.

[5] The TCHRA created an at-will employment exception by prohibiting covered entities from discriminating against individuals on the basis of race, color, disability, religion, sex, national origin, or age. TEX. LAB. CODE ANN. §§ 21.051–.053.

10

using the single, integrated enterprise theory when reviewing claims brought under the TCHRA, which is explicitly modeled after Title VII. *See* Tex. Lab. Code Ann. § 21.001; *Trevino*, 701 F.2d at 403*; Fields v. Teamsters Local Union No. 88*, 23 S.W.3d 517, 524–25 (Tex. App.—Houston [1st Dist.] 2000, pet. denied) (applying the single, integrated enterprise theory to claims for gender discrimination, sexual harassment, and retaliation under the TCHRA but concluding the evidence was insufficient to conclude the entities qualified as a single, integrated enterprise); *see also Staller v. Serv. Corp. Int'l*, No. 04-06-00212-CV, 2006 WL 3018039, at *1–2 (Tex. App.—San Antonio Oct. 25, 2006, no pet.) (mem. op.) (applying the single, integrated enterprise theory in retaliation and discrimination suit brought under the TCHRA); *Sullivan v. Tex. Dep't of Criminal Justice*, No. 03-99-00149-CV, 2000 WL 140857, at *2 (Tex. App.—Austin Feb. 3, 2000, pet. denied) (mem. op.) (applying the single, integrated enterprise theory in discrimination suit brought under the TCHRA); *Town Hall Estates-Whitney, Inc. v. Winters*, 220 S.W.3d 71, 75, 87 n. 12 (Tex. App.—Waco 2007, no pet.) (discussing in dicta the "single business enterprise theory" in suit brough for retaliation under § 242.133(b) of the Texas Health and Safety Code after noting § 242.001 directs that chapter 242 be construed "broadly"); *Rossi v. CAE, Inc.*, No. 05-18-01258-CV, 2020 WL 2847286, at *10-11 (Tex. App.—Dallas June 2, 2020, pet. denied) (concluding plaintiff failed to raise a fact issue that company was her employer based on the single, integrated enterprise theory in her wrongful termination suit under *Sabine Pilot*, 687 S.W.2d at 735)*.* However, in contrast with "employer" under Title VII, there is no analogous authority compelling a liberal construction of the term "employer" or "employee" for purposes of § 161.134. *Cf.* Tex.

11

HEALTH & SAFETY CODE ANN. § 242.001(f); TEX. LAB. CODE ANN. § 21.001; *Trevino*, 701 F.2d at 403.

## IV. DISCUSSION

Dr. Janaki argues that the trial court erred when it granted appellees' motions for summary judgment because a genuine issue of fact exists as to whether CPG, the Hospitals, and the Cancer Centers constituted a single, integrated enterprise. To determine whether a genuine issue of fact existed, we must first determine if the single, integrated enterprise theory applies to retaliation claims under § 161.134. *See W. Trinity Props., Ltd.*, 92 S.W.3d at 869 ("A fact is 'material' only if it affects the outcome of the suit under the governing law."). We conclude that it does not.

### A. Single, Integrated Enterprise

In support of her assertion that retaliation claims under § 161.134 should invoke the single, integrated enterprise theory, Dr. Janaki points to the intersection of federal discrimination claims and TCHRA claims. *See, e.g., Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 507 (Tex. 2012) (noting that courts look to federal law in interpreting the TCHRA and "should correlate the TCHRA with Title VII when possible"). Dr. Janaki asserts that § 161.134 is similar to the TCHRA in that both are "meant to protect employees from discrimination and retaliation in the workplace . . . ."[6] However, as Dr. Janaki concedes, no court has ever applied the single, integrated enterprise theory to different entities under § 161.134.

---

[6] We note that the TCHRA protects employees from retaliation "who, *under [the TCHRA]*: (1) opposed a discriminatory practice; (2) makes or files a charge; (3) files a complaint; or (4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing." TEX. LAB. CODE ANN. § 21.055 (emphasis added); *see Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 585 (Tex. 2017); *San Antonio Water Sys. v. Nichols*, 461 S.W.3d 131, 137 (Tex. 2015) (setting out the elements of a retaliation claim under the TCHRA).

"When interpreting a statute, our primary objective is to ascertain and give effect to the [l]egislature's intent without unduly restricting or expanding the Act's scope." *Greater Houston P'ship v. Paxton*, 468 S.W.3d 51, 58 (Tex. 2015). "[I]f a statute is unambiguous, rules of construction or other extrinsic aids cannot be used to create ambiguity." *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 866–67 (Tex. 1999). "If a statute uses a term with a particular meaning or assigns a particular meaning to a term, we are bound by the statutory usage." *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). "Undefined terms in a statute are typically given their ordinary meaning, but if a different or more precise definition is apparent from the term's use in the context of the statute, we apply that meaning." *Id.* "We presume that the [l]egislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen." *Id.* When interpreting a statute, "we look at the entire act, and not a single section in isolation." *Fitzgerald*, 996 S.W.2d at 866.

Section 161.134 is a statutory exception to Texas at-will employment, rather than an extension of federal law, which we must carefully construe. *See* TEX. HEALTH & SAFETY CODE ANN. § 161.134; *see also Ritchie*, 443 S.W.3d at 885–86. Section 161.134 unambiguously provides relief only for *employees* who have been retaliated against by an *employer*, necessitating that the plaintiff be an employee of a hospital or treatment facility. *See* TEX. HEALTH & SAFETY CODE ANN. § 161.134; *see also Barron*, 218 S.W.3d at 810. Because § 161.134 does not contain a definition of "employee," we must apply its plain meaning. *See Combs*, 340 S.W.3d at 439. An employee is "someone who works in the service of another person (the employer) under an express or implied contract of hire,

13

*under which the employer has the right to control the details of work performance.*"

*Employee*, BLACK'S LAW DICTIONARY (11th ed. 2019) (emphasis added).

We further observe that the legislature, in a separate statute, removed the employee limitation present under § 161.134, providing relief for *non-employees* who have been retaliated against by a covered entity. *Compare* TEX. HEALTH & SAFETY CODE ANN § 161.134 *with id.* § 161.135. Thus, under §§ 161.134 and 161.135, the legislature created separate and distinct avenues for relief for employees and non-employees of covered entities; we must assume it did so intentionally. *See Combs*, 340 S.W.3d at 439 ("We presume that the [l]egislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen."); *see also* TEX. HEALTH & SAFETY CODE ANN. §§ 161.134–.135.

Even if we were to analogize TCHRA cases as appellant urges us to, we note that unlike the TCHRA, § 161.134 and the accompanying statutes do not contain a specific purpose to provide for the execution of Title VII or any other federal law. *Compare* TEX. LAB. CODE ANN. § 21.001(1) (providing that the TCHRA's express purpose is to "provide for the execution of the policies of Title VII . . . and its subsequent amendments.") *with* TEX. HEALTH & SAFETY CODE ANN. §§ 161.131–.137. "The term 'employer' as used in Title VII . . . was meant to be liberally construed." *Trevino*, 701 F.2d at 403. Additionally, unlike § 161.134, both Title VII and the TCHRA explicitly extend their protections to more than mere *employees*. *See NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex. 1999); *see also* TEX. LAB. CODE ANN. § 21.051 (prohibiting discrimination and adverse employment actions against *individuals* of a protected class, including job applicants); 42 U.S.C. § 2000e–2 (same).

14

Accordingly, we are unpersuaded by appellant's urged application of the single, integrated enterprise theory to her § 161.134 retaliation claim. Having considered the unambiguity of the statute, the existence of a separate statute addressing retaliation claims by non-employees, and because the legislature has not expressly guided us to consider federal law in applying § 161.134 or to interpret it broadly, we decline to extend the single, integrated enterprise theory to § 161.134. *See Fitzgerald*, 996 S.W.2d at 866 (providing we may not use extrinsic aids to create ambiguity where none exists).

## B.    Summary Judgment

Having concluded that the single, integrated enterprise theory does not apply to § 161.134 claims, we now analyze the record to determine whether a genuine issue of material fact exists as to Dr. Janaki's claims. *See Knott*, 128 S.W.3d at 215–16. When, as is the case here, the trial court's order does not specify the grounds for its summary judgment, "we must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious." *See id.* at 216.

### 1.  CPG

By her first issue, Dr. Janaki asserts the trial court erred by granting CPG's motion for summary judgment because, under the single, integrated enterprise theory, a genuine issue of material fact exists as to whether CPG is a hospital, mental health facility, or treatment facility. However, as discussed *supra*, the single, integrated enterprise theory does not apply under § 161.134. In reviewing Dr. Janaki's evidence in response to CPG's motion for summary judgment, we find no evidence that would support a finding that her former employer, CPG, is a hospital, mental health facility, or treatment facility, a required element of her claim. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 161.131(1), (3), (7);

15

161.134; 241.003(5), (7), (15); 464.001(5); 571.003(12); *see also Knott*, 128 S.W.3d 215 (citing TEX. R. CIV. P. 166a) ("[T]he party moving for summary judgment bears the burden to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law."). As such, the trial court did not err by granting CPG's motion for summary judgment. *See Mason*, 143 S.W.3d at 798. Dr. Janaki's first issue is overruled.

### 2. The Hospitals and Cancer Centers

By her second and third issues, Dr. Janaki asserts the trial court erred because, under the single, integrated enterprise theory, Dr. Janaki was an employee of the Hospitals and Cancer Centers. Absent the single, integrated enterprise theory, Dr. Janaki did not present any evidence that would permit a finding that the Hospitals and Cancer Centers employed her. Accordingly, we conclude the trial court did not err by granting the Hospitals and Cancer Centers' motions for summary judgment. *See Mason*, 143 S.W.3d at 798. Dr. Janaki's second and third issues are overruled.

### V.     CONCLUSION

The trial court's judgments are affirmed.

CLARISSA SILVA
Justice

Delivered and filed on the
8th day of April, 2021.

16